**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 95-5125

CARLOS TYRONE HENDERSON,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
Frank W. Bullock, Jr., Chief District Judge.
(CR-94-221-2)

Submitted: December 19, 1995

Decided: May 14, 1996

Before WILKINSON, Chief Judge, and HALL and NIEMEYER,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Charles Jackson Alexander, II, MORROW, ALEXANDER, TASH &
LONG, Winston-Salem, North Carolina, for Appellant. Walter C.
Holton, Jr., United States Attorney, Douglas Cannon, Assistant
United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Carlos Tyrone Henderson was indicted for possession with intent to distribute cocaine base. See 21 U.S.C. § 841(a) (1988). Henderson moved unsuccessfully to suppress the introduction of the drugs and subsequently pled guilty to the indictment, reserving his right to appeal the suppression ruling. Henderson now appeals, contending that the district court erred in admitting the drugs seized in connection with his arrest. We affirm.

I.

On August 31, 1994, Detectives Eddie Hoover and C. L. Piner were conducting narcotics interdiction at the Piedmont Triad International Airport in Greensboro, North Carolina. The officers observed Henderson exit a plane which arrived from Newark, New Jersey. The New York area is a source city for drugs for Greensboro. Henderson, who is African American, was dressed in street clothes and carrying a garment bag.

As Henderson walked past the officers, he made eye contact with Hoover and then quickly averted his eyes and ducked his head. After passing the officers, Henderson looked back twice. The officers followed Henderson out of the airport and approached him and two other men as they stood by a car in front of the terminal.

The officers identified themselves as law enforcement officers and displayed their badges and identification cards. Two other officers were in the area but were not involved in the encounter. Piner advised Henderson that they were conducting a drug investigation and asked Henderson for his airline ticket and some identification.

Henderson gave Piner his driver's license. There was conflicting testimony at the suppression hearing as to whether Piner gave Hen-

2

derson his license back, but for purposes of its decision, the district court assumed that the license was not returned. Piner then asked for consent to search Henderson's luggage, and Henderson acquiesced. The officers found a quantity of crack cocaine in Henderson's bag. The officers did not inform Henderson that he was free to refuse the search.

Henderson was charged in a one-count indictment with possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a). Henderson moved to suppress the drugs recovered from his luggage by the officers. The district court denied the motion, concluding that the encounter with the officers was consensual and that the officers did not initially approach Henderson on the basis of his race. Accordingly, Henderson's motion to suppress the introduction of the drugs was denied.

On appeal, Henderson contends that the district court erred in its determination that the consensual encounter never developed into a seizure. According to Henderson, he was seized without reasonable suspicion when Officer Piner failed to return his driver's license. Henderson also asserts that the officers' initial decision to approach him was made with discriminatory intent in violation of the Equal Protection Clause.

II.

The first issue is whether the encounter between the officers and Henderson ceased to be consensual at some point and became a seizure. Consensual encounters do not implicate the Fourth Amendment, but seizures do. See Florida v. Bostick, 501 U.S. 429, 434 (1991). The Supreme Court has consistently held, however, "that a seizure does not occur simply because a police officer approaches an individual and asks a few questions." Id.; see also INS v. Delgado, 466 U.S. 210, 216 (1984) (interrogation relating to one's identity or a request for identification does not, by itself, implicate the Fourth Amendment).

As the Supreme Court explained in Terry v. Ohio , 392 U.S. 1, 19 n.16 (1968):

3

Obviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

Only when the circumstances of the encounter become "so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave" does the encounter become a seizure. Delgado, 466 U.S. at 216. It is also clear that the encounter does not become a seizure merely because the officers do not tell the defendant that he is free to leave or that he may refuse to comply with their requests. United States v. Analla, 975 F.2d 119, 124 (4th Cir. 1992), cert. denied, ___ U.S. ___, 61 U.S.L.W. 3714 (U.S. Apr. 19, 1993) (No. 92-6891).

We find that Henderson was not seized when the officers approached him and asked to see his license. Further, Henderson's cooperation with the officers did not convert the encounter into a seizure, even though the officers did not tell Henderson that he was free to leave or to refuse the request. Neither officer had a gun drawn, and there is no evidence of any use or threat of physical force. See United States v. Flowers, 912 F.2d 707, 712 (4th Cir. 1990) (seizure cannot occur in the absence of threats, offensive contact, or similar circumstances), cert. denied, 501 U.S. 1253 (1991).

In addition, Piner's retention of Henderson's license did not amount to a seizure. Piner did not take Henderson's license to the squad car or retain it for an extended period of time. Henderson was free to request that his license be returned and to leave the scene. See Analla, 975 F.2d at 124.

We thus conclude that the district court's finding that a seizure did not occur was not clearly erroneous. See United States v. Gooding, 695 F.2d 78, 82 (4th Cir. 1982) (determination of whether a seizure occurred is generally one of fact). Because Henderson was not seized within the meaning of the Fourth Amendment when the police searched his bag and he does not dispute the district court's finding that he voluntarily consented to the search, the evidence obtained was properly admitted.

4

III.

Henderson next claims that he was denied equal protection because he was approached by the officers solely on the basis of his race. Without deciding whether selecting persons for consensual interviews based solely on race raises equal protection concerns, we find that the district court's factual determination that the officers approached Henderson based on other factors besides race was not clearly erroneous. Though certainly not dispositive, Hoover testified that race was not a factor. In addition, Hoover testified that Henderson arrived from a drug-source city, refused to make eye contact, and glanced back at the officers twice as he walked out of the terminal. We thus conclude that Henderson failed to show discriminatory intent on the part of the officers; this failure forecloses any equal protection claim. See McCleskey v. Kemp, 481 U.S. 279, 292 (1987) (a defendant who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination).

The judgment of the district court is therefore affirmed. We dispense with oral argument in view of our prior order directing that this appeal proceed on the briefs.

AFFIRMED

5